**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

| | |
|---|---|
| **JASMINE CAMPBELL,**<br>*on behalf of herself and others similarly*<br>*situated,*<br><br>                    **Plaintiff,**<br><br>        **- against -**<br><br>**LEARN & PLAY CENTER INC. d/b/a**<br>        **LEARN & PLAY CENTER and**<br>        **BRIGHT START HOME**<br>        **LEARNING CENTER,**<br>**YVONNE CONDE, and**<br>**JACQUELINE CONDE,**<br><br>                    **Defendants.** | **Case No.: 2:22-cv-5947**<br><br><br>**COLLECTIVE ACTION**<br>**COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff, JASMINE CAMPBELL ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby files this Collective Action Complaint against Defendants LEARN & PLAY CENTER INC. d/b/a LEARN & PLAY CENTER and BRIGHT START HOME LEARNING CENTER (the "Corporate Defendant"), YVONNE CONDE and JACQUELINE CONDE (the "Individual Defendants," and together with Corporate Defendant, the "Defendants") and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

1

("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid overtime wages, (2) unpaid wages, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid overtime wages, (2) unpaid minimum wages, (3) unpaid wages, (4) statutory penalties, (5) liquidated damages for unpaid wages, (6) liquidated damages for late payment of wages, and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331.

4.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

### *JASMINE CAMPBELL*

7.      Plaintiff is an adult who resides in Nassau County, New York.

8.      Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

9.      Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***Defendants***

10.      At all relevant times, Defendants owned and operated an enterprise comprised of two (2) daycares under the tradenames and addresses as follows:

   a.   "Learn & Play Center"  - 2163 Grand Avenue, Baldwin, New York 11510; and

   b.   "Bright Start Home Learning Center" – 42 Nassau Parkway, Oceanside, New York 11572

       (collectively, "Learn & Play Center Daycares").

11.      At or around the start of Plaintiff's employment with Defendants, both daycares operated under the tradename Learn & Play Center. In or around March 2020, Defendants renamed their 42 Nassau Parkway daycare to Bright Start Home Learning Center.

12.      At all relevant times, Defendants owned and operated Learn & Play Center Daycares as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

13.      At all relevant times, employees were interchangeable and freely transferred among the Learn & Play Center Daycares.

14.      At all relevant times, Learn & Play Center Daycares were operated under the same wage and hour policies established by Individual Defendants.

15.      At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

16.     At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### LEARN & PLAY CENTER INC.

18.     Corporate Defendant LEARN & PLAY CENTER INC. d/b/a LEARN & PLAY CENTER and BRIGHT START HOME LEARNING CENTER is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 2163 Grand Avenue, Baldwin, New York 11510, and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207. Corporate Defendant operates two daycares, one located at 42 Nassau Parkway, Oceanside, New York 11572 ("42 Nassau Parkway") and one located at 2163 Grand Avenue, Baldwin, New York 11510 ("2163 Grand Avenue"). Prior to in or around March 2021, Corporate Defendant operated their 42 Nassau Parkway daycare at 52 Nassau Parkway, Oceanside, New York 11572 ("52 Nassau Parkway").

19.     At all relevant times, LEARN & PLAY CENTER INC. had an annual dollar volume of sales in excess of $500,000.

20.     LEARN & PLAY CENTER INC. is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

21.     At all relevant times, LEARN & PLAY CENTER INC. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

22.     LEARN & PLAY CENTER INC. applies the same employment policies, practices and procedures to all daycare teachers at the "Learn & Play Center Daycares."

***YVONNE CONDE***

23.     At all relevant times, Individual Defendant YVONNE CONDE has been an owner of the "Learn & Play Center Daycares."

24.     At all relevant times, YVONNE CONDE has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at the "Learn & Play Center Daycares."

25.     At all relevant times, YVONNE CONDE has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at the "Learn & Play Center Daycares."

26.     At all relevant times, YVONNE CONDE has had the power to maintain employment records, including time and/or wage records of employees at the "Learn & Play Center Daycares."

27.     At all relevant times, YVONNE CONDE has had authority over personnel or payroll decisions and employment policies, practices and procedures at the "Learn & Play Center Daycares."

28.     At all relevant times, YVONNE CONDE has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

29.     YVONNE CONDE is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

*JACQUELINE CONDE*

30.     At all relevant times, Individual Defendant JACQUELINE CONDE has been an owner of the "Learn & Play Center Daycares."

31.     At all relevant times, JACQUELINE CONDE has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at the "Learn & Play Center Daycares."

32.     At all relevant times, JACQUELINE CONDE has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at the "Learn & Play Center Daycares."

33.     At all relevant times, JACQUELINE CONDE has had the power to maintain employment records, including time and/or wage records of employees at the "Learn & Play Center Daycares."

34.     At all relevant times, JACQUELINE CONDE has had authority over personnel or payroll decisions and employment policies, practices and procedures at the "Learn & Play Center Daycares."

35.     At all relevant times, JACQUELINE CONDE has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

36.     JACQUELINE CONDE is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

37.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt employees employed as daycare workers,

and/or employed in a similar position performing similar duties as a daycare worker, at the "Learn & Play Center Daycares," owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

38.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members their full and proper wages, including their overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

39.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

40.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

41.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## STATEMENT OF FACTS

42.     In or around July 2015, Plaintiff was hired by Defendants to work as a daycare worker at Defendants' "Learn & Play Center," located at 52 Nassau Parkway, Oceanside, New York 11572. Starting in or around March 2021, Defendants moved their daycare from 52 Nassau Parkway, Oceanside, New York 11572  to 42 Nassau Parkway, Oceanside, New York 11572 and

operated "Learn & Play Center" from the new location. In or around March 2020, Defendants renamed that daycare from "Learn & Play Center" to "Bright Start Home Learning Center." Plaintiff worked for Defendants until on or about June 21, 2021.

43.     From in or around July 2015 through December 2017, Plaintiff was scheduled to work and did work from 7:30am to 4:30pm, from Monday through Friday every week, for a total of forty-five (45) hours per week. At all relevant times, Plaintiff worked without any meal break and did not have a set meal break. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs worked similar hours throughout this period.

44.     From in or around July 2015 through December 2017, Plaintiff was compensated on an hourly basis up to only forty (40) hours per workweek, at a rate of $14.00 per hour. Plaintiff was not compensated for her overtime hours worked. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs were similarly paid on an hourly basis up to only forty (40) hours per workweek. At all relevant times, Plaintiff and FLSA Collective Plaintiffs were not compensated for any hours worked in excess of forty (40) hours per week.

45.     From in or around January 2018 through March 2020, Plaintiff was scheduled to work and did work from 6:30am to 4:00pm, from Monday through Friday every week, for a total of forty-seven-and -a-half (47.5) hours per week. On a weekly basis, Plaintiff worked until 4:30pm, for three (3) days per week, for a total of forty-nine (49) hours per week. At all relevant times, Plaintiff worked without any meal break and did not have a set meal break. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs worked similar hours throughout this period.

46.     From in or around January 2018 through March 2020, Defendants changed their compensation structure and informed Plaintiff that they would compensate her on a fixed salary basis at a rate of $1360.00 on a biweekly basis, which was a derived rate of $680.00 per week, and that she would be compensated in part in cash and in part by check. Based on Plaintiff's observations and conversations with her co-workers, FLSA Collective Plaintiffs' compensation structure was similarly changed to a fixed salary basis and they were compensated in part in cash and in part by check. At all relevant times, Plaintiff and FLSA Collective Plaintiffs were not compensated for any hours worked in excess of forty (40) hours per week.

47.     From January 2018 through January 2019, on a biweekly paycheck, Defendants would compensate Plaintiff by check for a total of forty (40) hours at a rate of $15.00 per hour. As such, during this period, when Defendants compensated Plaintiff, Defendants would compensate Plaintiff $600.00 on a biweekly paycheck, and the remainder by cash.

48.     From in or around February 2019, when Defendants would compensate Plaintiff, Defendants compensated Plaintiff entirely in cash. On occasion, Defendants failed to compensate Plaintiff for her wages earned. Based on Plaintiff's observations and conversations with her co-workers, FLSA Collective Plaintiffs' compensation structure was similarly changed such that they were also compensated entirely in cash starting from in or around February 2019.

49.     Starting from in or around 2018, Defendants increasingly failed to compensate Plaintiff and was frequently delayed in their payments to Plaintiff. From in or around March 2019, Defendants failed to compensate Plaintiff for months for any of her hours worked, including for paychecks that were already past due. Throughout this period, Plaintiff repeatedly complained to Defendants regarding their failure to compensate her for earned wages. Defendants' failure to fully compensate Plaintiff for her hours worked continued through the end of her employment. Based

on Plaintiff's observations and conversations with her co-workers, FLSA Collective Plaintiffs have also complained to Plaintiff that they were not compensated for all of their wages earned. Several of Plaintiff's colleagues resigned due to Defendants' failure to compensate them for their wages earned.

50.     From in or around April 2020 through December 2020, Plaintiff was scheduled to work shifts that ranged between 6:30am to 4:00pm, from Monday through Friday every week. At all relevant times, Plaintiff worked a minimum of seven (7) hours per workday, typically working at least seven-and-a-half (7.5) to eight-and-a-half (8.5) hours per workday, for a total of thirty-five (35) to forty-five-and-a-half (42.5) hours per week. At all relevant times, Plaintiff worked without any meal break and did not have a set meal break. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs worked similar hours throughout this period.

51.     From in or around April 2020 through December 2020, Defendants changed their compensation structure and informed Plaintiff that they would compensate her on a daily fixed salary basis at a rate of $97.60 per workday. At all relevant times, the derived minimum wage rate was below that of the New York State statutory minimum wage rate. Moreover, during weeks in which Plaintiff worked over forty (40) hours per workweek, Defendants failed to compensate her overtime hours worked at the overtime rate. At all relevant times, Defendants compensated Plaintiff in cash. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs were similarly paid and were not paid for overtime hours worked for weeks in which they worked over forty (40) hours per workweek.

52.      From in or around January 2021 through the end of Plaintiff's employment on or about June 21, 2021, Plaintiff was scheduled to work shifts that ranged between 8:00am to 4:00pm,

from Monday through Friday every week. At all relevant times, Plaintiff worked a minimum of seven (7) hours per workday, typically working at least seven-and-a-half (7.5) hours per workday, for a total of approximately thirty-five (35) to thirty-seven-and-a-half (37.5) hours per week. At all relevant times, Plaintiff worked without any meal break and did not have a set meal break. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs worked similar hours throughout this period.

53.     From in or around January 2021 through the end of Plaintiff's employment on or about June 21, 2021, Defendants informed Plaintiff that they would compensate her on a daily fixed salary basis, at a rate of $136.00 per workday. At all relevant times, Defendants compensated Plaintiff in cash. Based on Plaintiff's observations and conversations with her co-workers, Plaintiff and FLSA Collective Plaintiffs were similarly paid.

54.     On or about June 21, 2021, following Defendants' continued failure to compensate Plaintiff her wages and several weeks of missing wages, Plaintiff terminated her employment with Defendants.

55.     Upon hiring through 2017, Defendants failed to compensate Plaintiff and similarly situated employees for their overtime hours worked at the overtime rate of time-and-a-half.

56.     From 2018 through March 2020, Plaintiff and FLSA Collective Plaintiffs were similarly not compensated at the proper minimum wage rate and for their overtime hours worked at the overtime rate of time-and-a-half.

57.     From 2018 through March 2020, Defendants failed to compensate Plaintiff and similarly situated employees for their overtime hours worked at the overtime rate of time-and-a-half. From 2018 through March 2020, Plaintiff was informed that her compensation would be $1360.00 on a biweekly basis, regardless of hours worked, which was a derived rate of $680.00

per week. This derived weekly rate was below that of the New York State statutorily required minimum salary threshold for exempt employees, which requires a minimum of $825.00 per week in 2018, a minimum of $900.00 per week in 2019, and a minimum of $975.00 per week in 2020, for employers in Nassau, Suffolk and Westchester counties.

58.     From 2018 through the end of her employment, Plaintiff and similarly situated employees did not receive notice that their fixed salary rates were intended to cover any of their overtime hours worked. As a result, Plaintiff and FLSA Collective Plaintiffs were not compensated for their overtime premium at time-and-a-half for hours worked in excess of forty (40) hours per workweek.

59.     Throughout Plaintiff's employment, Plaintiff's and FLSA Collective Plaintiffs' primary duties consisted of preparing meals at the daycare and providing care and supervision for the toddlers/children at the daycare. At all times, Plaintiff and similarly situated employees did not direct or manage the work of other employees, had no authority to hire or fire, did not exercise independent business judgment, and did not work in an area requiring special training, experience or knowledge. At all times, Plaintiff and similarly situated employees worked under supervision, and was provided with strict guidelines to complete their work.

60.     From 2018 through March 2020, to the extent that Defendants raise an affirmative defense that Plaintiff and similarly situated employees were exempt from overtime compensation, Defendants misclassified them because they did not meet the exemption requirements under the FLSA and NYLL.

61.     From 2018 through the end of Plaintiff's employment with Defendants, to the extent that Defendants raise an affirmative defense that Plaintiff and similarly situated employees were exempt from overtime compensation at any point during this period because they were no

longer an employee, but independent contractors, Defendants misclassified Plaintiff and FLSA Collective Plaintiffs.

62. From 2018 through the end of Plaintiff's employment with Defendants, Defendants changed their compensation structure multiple times in order to avoid the financial cost of compensating Plaintiff and similarly situated employees their proper minimum wage and overtime pay. At all relevant times, Plaintiff and FLSA Collective Plaintiffs were employees for the following factors:

    a. Their work for Defendants was an integral part of Defendants' business which operated two daycares based in Long Island, New York. Their work was integral because Defendants required daycare workers to operate the daycares and to provide care and supervision for the toddlers/children.

    b. Their position was not temporary and they were not hired to work on a temporary basis.

    c. They performed substantially the same work duties and assignments throughout the entirety of their employment with Defendants.

    d. They were required to work full-time hours set by Defendants.

    e. They worked for Defendants for an extended period. Plaintiff also worked continuously for Defendants for approximately six years.

    f. They did not invest in facilities or equipment. Defendants provided the daycare facilities, supplies, equipment, and furniture, associated with running its business, and all other operating costs and expenses.

    g. Defendants exercised a great deal of control over Plaintiff and similarly situated employees, including providing them with training for how Defendants expected them

to interact with the children and to complete their assignments. They were also directly supervised by Individual Defendants. Their position is also not considered that of highly skilled laborers and Defendants are able to easily find new employees to fill their positions.

h.    They had no opportunity for profit or loss as they had no decision-making opportunity.

63.    From April 2020 through December 2020, Defendants failed to compensate Plaintiff and similarly situated employees for at least their minimum wage for all hours worked as the derived minimum wage rate was below that of the prevailing statutory minimum wage rate. Moreover, during weeks in which Plaintiff and similarly situated employees worked over forty (40) hours per workweek, Defendants also failed to compensate them for their overtime hours worked at the overtime rate of time-and-a-half.

64.    During the summer of 2020, Plaintiff informed Defendants of her intention to resign due to Defendants' repeated failure to compensate Plaintiff her wages. At the time, Defendants owed Plaintiff approximately $10,088.00 in unpaid wages for wages Plaintiff earned from 2018 through 2020. Following conversations with Individual Defendants JACQUELINE CONDE and YVONNE CONDE, the parties had agreed to a payment plan for the unpaid wages of $10,088.00 and Plaintiff continued her employment with Defendants.

65.    Thus far, pursuant to the payment plan, Defendants compensated Plaintiff a total of $4,520.00 of the $10,088.00. Plaintiff received one payment of $1,000.00 and four payments of $880.00. To date, Defendants still owe $5,568.00 of unpaid wages to Plaintiff from the previously negotiated payment plan.

66.    In or around June 2021, Plaintiff informed Defendants of her resignation as they had failed to compensate her for at least three-and-a-half (3.5) weeks of work leading up to her

resignation. To date, Defendants still owe Plaintiff compensation for her last three-and-a-half (3.5) weeks of work.

67.     At all times, Plaintiff did not receive a proper notice of pay rate or pay day from Defendants, as required under the NYLL.

68.     At all times, Plaintiff did not receive proper wage statements from Defendants. Plaintiff did not receive wage statements due to Defendants' misclassification and failure to compensate her proper wages for all hours worked.

69.     At all times, Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiff and similarly situated employees, in violation of the FLSA and NYLL.

70.     At all times, Defendants were aware or should have been aware that Plaintiff and similarly situated employees regularly worked more than forty (40) hours per workweek yet failed to pay overtime compensation for hours worked over forty (40) in a workweek.

71.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and similarly situated employees the full and proper overtime wages at a rate not less than time and one-half her regular rate of pay for all hours worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

72.     Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff and FLSA Collective Plaintiffs for all hours worked, in violation of the FLSA and NYLL.

73.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff pursuant to the requirements of the NYLL.

74.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff pursuant to the requirements of the NYLL.

75.     At all relevant times, Defendants compensated Plaintiff and similarly situated employees on a biweekly basis. However, at all times, Plaintiff's and similarly situated employees' duties consisted of at least 25% of physical labor as she and other daycare workers were required to clean and organize the daycare, and prepare and serve meals. As such, their wages must be paid weekly.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

76.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

77.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

78.     Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

79.     Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked.

80.     Defendants failed to pay Plaintiff and FLSA Collective Members their full wages to which they were entitled under the FLSA.

81.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

82.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

83.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

84.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage and overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

85.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

86.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

87.     At all times relevant, Plaintiff and similarly situated employees has been employees of Defendants, and Defendants have been employers of Plaintiff and similarly situated employees within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

88.     Defendants failed to pay Plaintiff and similarly situated employees their full wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

89.     Defendants failed to pay Plaintiff and similarly situated employees proper overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

90.     Defendants failed to pay Plaintiff and similarly situated employees the full and proper wages for all hours worked.

91.     Defendants failed to furnish Plaintiff with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

92.     Defendants failed to furnish Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

93.     Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and similarly situated employees as required by the NYLL and the supporting New York State Department of Labor Regulations.

94.     Defendants failed to properly disclose or apprise Plaintiff and similarly situated employees of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

95.     As a result of Defendants' willful violations of the NYLL, Plaintiff and similarly situated employees are entitled to recover from Defendants their unpaid wages, unpaid wages overtime, liquidated damages, statutory damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

96.     Throughout the relevant periods, the New York Labor Law obligated employers to pay "manual workers" weekly, and within seven days of the end of the week in which wages were earned. NYLL §191. Manual workers are defined as "individual who spend more than 25% of

their working time engaged in 'physical labor.'" *Id*. Plaintiff and similarly situated employees spend at least 25% of their working time engaged in physical labor, which qualifies them as manual workers under the NYLL.

97.     Defendants willfully failed to pay Plaintiff and similarly situated employees their wages within seven days of the end of the week in which wages were earned, in violation of NYLL §191.

98.     Due to Defendants' failure to pay Plaintiff on a timely and weekly basis, Plaintiff is entitled to recover from Defendants, 100% liquidated damages for each individual late payment during the relevant period, as well as reasonable attorneys' fees, costs and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, and FLSA Collective Plaintiffs, respectfully requests that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  An award of unpaid wages due under the FLSA and NYLL;

c.  An award of unpaid minimum wages due under the FLSA and NYLL;

d.  An award of unpaid overtime wages due under the FLSA and NYLL;

e.  An award of damages for the late payment of wages;

f.  An award of liquidated damages as a result of Defendants' failure to pay wages and the full and proper overtime wages, pursuant to the FLSA and NYLL;

g.  Statutory penalties for Defendants' failure to provide Plaintiff with proper wage notices, as required by the NYLL;

h.  Statutory penalties for Defendants' failure to provide Plaintiff with proper wage statements, as required by the NYLL;

i.  Pre-judgment and post-judgment interest;

j.  Reasonable attorneys' fees and costs of this action;

k.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

l.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

m.  Such other and further relief as the Court deems just and proper.

Dated:  October 4, 2022                    Respectfully submitted,

                                           **BROWN KWON & LAM, LLP**

                              By:    _/s/ Clara Lam_____

                                     Clara Lam, Esq. (CL6399)
                                     521 Fifth Avenue, 17th Floor
                                     New York, NY 10175
                                     Tel.: (212) 295-5828
                                     Fax: (718) 795-1642
                                     clam@bkllawyers.com
                                     _Attorneys for Plaintiff_